IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------- :
                                                        : CASE NO. 4:08CR00077
DALE DATTILIO,                                          :
                                                        :
                                         Petitioner,    :
                                                        : MEMORANDUM OF OPINION AND
                      -vs-                              : ORDER
                                                        :
                                                        :
UNITED STATES OF AMERICA,                               :
                                                        :
                                         Respondent.
-------------------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

  This matter comes before the Court on petitioner Dale Dattilio's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody. (Doc. 46). The petitioner, who pled guilty to child pornography charges, argues that he was provided constitutionally defective representation during sentencing and on appeal. He contends that his sentence should accordingly be vacated and that a new sentencing hearing should be held. The government filed a response in opposition (Doc. 48), and the petitioner replied. (Doc. 50). For the reasons that follow, the petitioner's motion is denied.

**I.**

On 13 February 2008, a federal grand jury indicted the petitioner on three counts. Count I charged the petitioner with having knowingly received and distributed in interstate commerce, by computer, computer image and video files showing actual minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2). (Doc. 1, p. 1). Count II charged the petitioner with knowingly receiving and distributing child pornography that had been shipped and transported in interstate and foreign commerce, by computer, in violation of 18 U.S.C. § 2252A(a)(2)(A). (Doc. 1, p. 2). Counts I and II related to conduct by the petitioner taking place from 1 August 2004 through 12 July 2005. (Doc. 1, p. 2).

Count III charged the petitioner with knowingly possessing on 12 July 2005 a computer and numerous CDs that contained child pornography, which had been shipped and transported in interstate and foreign commerce by any means including a computer, and which was produced using material which had been so shipped and transported, by any means including by computer, in violation of 18 U.S.C. 2252A(A)(5)(B). (Doc. 1, p. 2)

On 21 April 2009, the petitioner entered pleas of guilty to all three Counts. (Doc. 29). In the plea agreement the petitioner admitted to the following conduct:

> Between August 1, 2004 and July 12, 2005, Defendant connected to the Internet using a computer from his home in the Northern District of Ohio. During that time period, and while connected to the Internet, Defendant utilized peer-to-peer file sharing software. Such software allowed Defendant to download files from other users' computers and made available certain files on Defendant's computer to other users. During that time period, Defendant downloaded from the Internet, and made available to others, to download from his computer, numerous image and video files of real minors engaged in sexually explicit conduct and child pornography. Also during that time period, Defendant saved numerous image

> and video files of real minors engaged in sexually explicit conduct and child pornography onto compact disks. On March 21, 2005 an undercover FBI agent in Dallas, Texas, downloaded from Defendant's computer in Campbell, Ohio three image files of real minors engaged in sexually explicit conduct. On July 12, 2005, Defendant possessed one-hundred-ninety-nine (199) compact disks, which contained numerous image and video files of real minors engaged in sexually explicit conduct and child pornography. Such image and video files included depictions of prepubescent minors engaged in sexually explicit conduct and being subjected to sadistic conduct.

(Doc. 29, ¶10).

On 17 September 2009, a sentencing hearing was held. After applying several enhancements and taking into consideration the petitioner's acceptance of responsibility, the Court calculated an adjusted offense level of 42. Two of the sentencing enhancements, which relate to Mr. Dattilio's current claim that his counsel was ineffective, are relevant here. They are:

> A five level enhancment for having engaged in a "pattern of activity involving sexual abuse of exploitation of a minor"; and

> A five level enhancement for distributing child pornography with the expection of the receipt of a thing of value, but not for pecuniary gain.

Based on a Criminal History Category I and an Offense Level of 42, the Guidelines called for a range of 360 months to life for Counts I and II and 120-240 months imprisonment for Count III. After considering the relevant § 3553 factors, the Court sentenced the petitioner to 360 months imprisonment on Counts I and II and 240 months imprisonment on Count III, with each term running concurrently.

The petitioner appealed his sentence, and the Sixth Circuit affirmed. See United States v. Dattilio, 442 Fed. Appx. 187, 194 (6th Cir. 2011). On 19 July 2012, the petitioner filed the present § 2255 motion to vacate, set aside, or correct sentence, on the ground that counsel was ineffective during sentencing and on appeal.

Mr. Dattilio now alleges six instances where counsel was ineffective:

(1) both sentencing and appellate counsel failed to contest this Court's application of a five-level offense level enhancement for engaging in a pattern of activity involving the sexual abuse of a minor, pursuant to U.S.S.G. § 2G2.2(b)(5).

(2) sentencing counsel failed to request a downward variance based on the petitioner's age and illness, pursuant to U.S.S.G. §§5H1.1, 5H1.4, and 5K2.22

(3) sentencing counsel attacked the petitioner's character and expressed disgust for child-pornography based crimes during the sentencing hearing;

(4) sentencing cousel failed to call certain favorable character witnesses at the sentencing hearing;

(5) both Sentencing and appellate counsel failed to contest the factual basis for the Court's application of a five-level enhancement for distribution of child pornography-related materials with the expectation of receipt of a thing of value, but not for pecuniary gain, pursuant to U.S.S.G. § 2G2.2(b)(3)(B); and

(6) appellate counsel did not raise a Double Jeopardy argument with respect to the petitioner's convictions.

The petitioner further maintains that his three-count conviction violates the Double Jeopardy Clause of the United States Constitution.

Each of Mr. Dattilio's grounds for relief will be addressed in turn below.

**II.**

Pursuant to 28 U.S.C. § 2255(b),

If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional

4

>rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255(b). To prevail on a § 2255 motion alleging constitutional error, the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. Brecht v. Abrahamson, 507 U.S. 619, 637-638 (1993). To prevail on a § 2255 motion alleging non-constitutional error, the petitioner must establish a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." United States v. Ferguson, 918 F.2d 627, 630 (6th Cir.1990) (citing Hill v. United States, 368 U.S. 424, 428 (1962)). It is well-settled "that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982)).

If the record includes a factual dispute, the district court "must hold a hearing to determine the truth of the [petitioner's] claims." Turner v. United States, 183 F.3d 474, 477 (6th Cir.1999). Petitioner is not entitled to a hearing, however, "if the files and records of the case conclusively show that he is not entitled to relief." Green v. United States, 65 F.3d 546, 548 (6th Cir.1995).

**III.**

Under Strickland, there are two components to an ineffective assistance of counsel claim: constitutionally deficient representation and prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). To show that representation was constitutionally deficient, the petitioner must demonstrate that counsel's errors were "so serious that

5

counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. However, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. Because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable,"

> every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id.

To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. When applying Strickland, if the Court can more easily dispose of an ineffective assistance claim based on lack of prejudice, it should follow that route. Watson v. Marshall, 784 F.2d 722, 726 (6th Cir.1985).

**IV.**

*Pattern of Activity Offense Level Enhancement*

At sentencing, this Court applied a five-level enhancement for engaging in a "pattern of activity involving sexual abuse or exploitation of a minor." Mr. Dattilio argues that counsel was ineffective for failing to object to the enhancement. The Court disagrees.

6

In 1986, Mr. Dattilio was convicted of gross sexual imposition in Stark County Common Pleas Court. The victim was his eleven-year-old step daughter. While there is no consensus as to the precise details underlying this conviction, the petitioner admitted during the sentencing hearing that he, along with several other people, had sexually molested his step-daughter over a six-year period. (See Sentencing Transcript at 15). Further, as stated in the PSR and as discussed during the hearing, the petitioner believed that the victim was "playing a game" with him. The petitioner claimed that the victim "started it" by touching him intimately. The petitioner denies having had intercourse with his step-daughter, but, as reflected in the PSR, the petitioner admitted that the abuse consisted of touching, though nothing more.

The petitioner's admissions are sufficient to support a finding of a "pattern of activity" enhancement.[1] As such, Mr. Datillio's lawyer's failure to object to the enhancement was not objectively unreasonable. And, assuming counsel was ineffective for failing to object, Mr. Datillio fails to make a convincing case that he was prejudiced as a result.

*Age and Illness-Related Downward Sentencing Variance*

At the time of sentencing, Mr. Datillio was 57 years old and he had allegedly been living with an AIDS diagnosis for five years. The petitioner contends that his

---

[1] A "pattern of activity" exists when a defendant engaged in "two or more separate instances of sexual abuse or sexual exploitation of a minor," regardless of whether those instances of abuse occurred during the offense for which the defendant was being sentenced, involved the same exploited minor as in the instant offense, or resulted from a prior conviction. U.S.S.G. § 2G2.2

7

lawyers' failure to request a downward sentencing variance based on his age and illness amounted to ineffective assistance of counsel.

The Court disagrees. Mr. Datillio fails to rebut the presumption that counsel's failure to request a variance based on age and illness falls within the wide range of professionally competent assistance. Under the sentencing guidelines, a downward variance *may* be appropriate when considerations based on age and/or illness "are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." Based on the record and Mr. Datillio's most recent submissions, there is nothing to suggest the petitioner's age (57 years-old) placed his case outside the range of typical cases, such that counsel was objectively unreasonable in failing to seek a downward variance on this basis.

Furthermore, Mr. Datillio cites no authority to support the proposition that an AIDS diagnosis, by itself, amounts to an extraordinary physical impairment warranting a downward variance. Mr. Datillio claims that his medical records demonstrate such an impairment, but the submitted records reveal very little about the severity of his physical condition, as it relates to his AIDS diagnosis. More importantly, they say nothing about his physical state at the time of sentencing. One set of documents indicates that Mr. Datillio was admitted to the hospital in January 2006 complaining of a high fever. His doctor, while recognizing Mr. Datillio's risk-factors for HIV/AIDS, stopped short of definitively diagnosing him with the disease. Instead, the doctor wrote that a "cellular immune deficiency such as HIV" was "most likely." The records also indicate that Mr. Datillio's symptoms at the time may have been attributable to "histoplasmosis,

8

tuberculosis, or some other chronic illness" such as "leukemia." The doctor also stated that Mr. Datillio's high fever may have resulted from the recent extraction of all his teeth.

A second set of medical records from May 2012 contains even less information. At that time, his doctor had diagnosed him with HIV/AIDS. However, according to the medical record, Mr. Datillio was "asymptomatic" and "[a]t [his] treatment goal."

Furthermore, the record in this case reveals that at the time of sentencing, Mr. Datillio was not suffering from an extraordinary physical impairment. When questioned by the Court about his HIV/AIDS diagnosis, Mr. Datillio stated that his condition was "under control." Therefore, based on the record, the Court is not persuaded that Mr. Datillio's lawyer provided ineffective representation by failing to seek a downward variance based on age or illness. Moreover, even if counsel were somehow ineffective in this regard, Mr. Datillio falls far short of demonstrating prejudice.

*Counsel's comments during sentencing*

Next, Mr. Datillio argues that counsel was ineffective when he made a number of comments at sentencing that allegedly "attacked petitioner's character." The petitioner maintains that through these comments his lawyer "sought to separate himself from petitioner." The petitioner further claims that his lawyer "virtually encourage[d] [this Court] to impose a sentence of 360 months." Mr. Datillio highlights various comments from the following portion of the sentencing transcript:

> And you know, there is no family here. And you know, I think that's pretty standard in these type cases (sic) where it's just such an embarrassment. And as I sat and viewed that video of the young lady that has given the victim impact statement, there is a lot in that statement, along with her parents, her mother and step-mother, to use. I told her, the agent, I'm done. I don't need to see any more.

9

      And it's not the first time I had to view the issues or these photographs, these stills and the videos. And it's absolutely -- it's just, it's ridiculous. I can't explain, after 26 years of practice, it's the worse (sic) thing I have seen. And the punishment should be severe, and the punishment has to be punishment that will put others on notice that it has to stop. But you know, your Honor, 360 months to life, as the guidelines identify it, is illogical. And just -- I just can't fathom that.

      The crime is bad. And you hear the same things over and over with the defendants similarly situated. It popped up. I didn't know exactly what I was doing. And you know, I find that to be true. However it arose, it awakened some monster with regards to an addiction, and it continued to look for it. It continued to download it. And it continued to view it.

      And they view the child pornography in other contexts too. They view it with bestiality and adults, mature, young teens, but of legal age. It becomes an addiction.

      And if you look the -- if you look at the, not just the child pornography but the whole issue of pornography, it's absolutely disgusting that we have an internet. It's great we could file our court documents. We could do everything on the internet. You could google your name and find out everything bad about an individual.

      \*\*\*

      And I understand the government's position, and the court's position, in trying to stop it. And it's no different than the drug trade we have out there at the present time. It's just -- it's out of hand.

      I know what you have to do in this matter. And maybe I'm going to pat the court on the back, but you've been on the common pleas bench and you reigned at a time when you had the authority to dish out a sentence that you felt was proper. You've been on the federal bench when the guidelines are mandatory. And now we are back to where you can make the call. I'm just asking you to be fair and just with regards to Mr. Dattilio.

(Sentencing Transcript pp. 41-44).

Without deciding the question of counsel's performance in Mr. Dattilio's favor, the Court acknowledges that some of counsel's commentary and personal opinions might have been better left unsaid in this context. However, most of Mr. Dattilio's objections either mischaracterize or take his lawyer's words out of context. For instance, Mr.

10

Dattilio's claim that his lawyer called him a "monster" in open court is contradicted by the record. The petitioner's lawyer used the phrase "awakened some monster with regards to addiction" to illustrate counsel's understanding of the psychology of a child pornography defendant. By invoking addiction as a potential mitigating factor, counsel was employing a sound strategy in representing his client. Mr. Dattilio fails to rebut the strong presumption that his lawyer's statements fell within the range of reasonably competent counsel.

In any event, even assuming that counsel's remarks, individually or as a whole, fell outside the range of reasonably competent representation, Mr. Datillio has failed to demonstrate counsel's commentary was prejudicial to his defense. With respect to Counts I and II, Mr. Datillio was facing a guidelines range of 360 months to life. He was ultimately sentenced at the bottom of the range. Before reaching this decision, the Court carefully considered Mr. Dattilio's background and personal characteristics, touching on his HIV diagnosis, his personal and family relationships, his education and work history, and his need for counseling, among other things. There is nothing in the record to suggest that counsel's remarks unduly affected the Court's carefully considered decision.

The Court also rejects Mr. Dattilio's contention that the Cronic standard applies in this instance. Under Cronic, prejudice is presumed when counsel fails to "subject the prosecution's case to meaningful adversarial testing." United States v. Cronic, 466 U.S. 648, 659 (1984). This is not the case here, as Mr. Palombaro actively challenged various specific offense characteristics identified in the PSR, the application of statutory

11

mandatory minimums, and the reasonableness of the PSR-calculated advisory sentencing range.

In sum, the petitioner fails to demonstrate either under <u>Strickland</u> or <u>Cronic</u> that he was prejudiced by counsel's remarks.

*Counsel's failure to call favorable character witnesses at sentencing*

Next, the petitioner argues that counsel was ineffective for failing to call favorable character witnesses at sentencing. The petitioner states that "[t]he prospective character witnesses would have testified about the history and characteristics of the petitioner," including his upbringing, good character, and devotion to his family. Attached to the petitioner's motion to vacate are a number of letters from his family. The gist of these letters is that if the letter writers had been given the opportunity to testify during the hearing, they would have spoken favorably of the petitioner's character. The writers characterize the petitioner as "trusted," "nice," "respectful," "support[ive]," "a great person," and "not a bad person." They all state their belief that the petitioner did not deserve the sentence he received, and that he should have received some lesser form of punishment.

Assuming for the sake of argument that counsel could be considered ineffective for failing to call the letter writers as character witnesses at sentencing, the petitioner fails to establish that he was prejudiced as a result. As noted above, the Court engaged in a lengthy discussion of the petitioner's history and characteristics during the hearing. At that time, the Court had been made aware that the petitioner enjoyed a close familial relationship with his siblings and with his son. The Court was also aware that the petitioner had the support of his son and that the petitioner's son wanted the petitioner

12

to reside with him upon his release. The Court considered these details in fashioning Mr. Dattilio's sentence, and concluded "that there is no justification in the facts of [the] case to warrant [a sentencing variance]." It is not apparent that the letter writers would have contributed information that was not already known to the Court. Nor is it apparent that that information would have affected the Court's decision. Therefore, there is no reasonable likelihood that had the letter writers testified, it would have made a difference to the sentence imposed by the Court.

*Counsels' failure to contest a five-level "Thing of Value" offense level enhancement*

Next, the petitioner argues that his lawyer provided him constitutionally ineffective representation when he failed to contest a five-point "thing of value" enhancement under U.S.S.G. § 2G2.2(b)(3)(B). The Court disagrees.

A five-level "thing of value" enhancement subjects a child pornography defendant to a five-level increase for "distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain . . . ." U.S.S.G. § 2G2.2. The Commentary explains what this means:

> Distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain" means any transaction, including bartering or other in-kind transaction, that is conducted for a thing of value, but not for profit. "Thing of value" means anything of valuable consideration. For example, in a case involving the bartering of child pornographic material, the "thing of value" is the child pornographic material received in exchange for other child pornographic material received in exchange for other child pornographic material bartered in consideration for the material received.

U.S.S.G. § 2G2.2(b)(3)(B), Commentary. In the Sixth Circuit, the enhancement applies depending on "whether there is evidence, direct or circumstantial, that [the defendant] reasonably believed that he would receive something of value by making his child

13

pornography files available for distribution through a peer-to-peer network." United States v. Mabee, 765 F .3d 666, 674 (6th Cir.2014) (alteration in original) (quoting United States v. Binney, 562 F. App'x 376, 379 (6th Cir.2014)) (internal quotation marks omitted). However, the § 2G2.2(b)(3)(B) enhancement "does not apply merely because a defendant used a file-sharing program, but extensive use of the program resulting in several hundred images will weigh in favor of the enhancement." Id. (quoting United States v. Emmons, 524 F. App'x 995, 999 (6th Cir.2013)) (internal quotation marks omitted).

In the present case, the probation officer recommended application of the five-point "thing of value" enhancement, because Mr. Dattilio "utilized a peer to peer file sharing software allowing the defendant to download files from other users' computers and made his files available to other users." (PSR, ¶19). The petitioner contends that his lawyer should have objected to this recommendation because the petitioner's use of file-sharing software, by itself, is insufficient to support the enhancement. The record reveals that counsel did not object to the enhancement, but, rather, he conceded that "Mr. Dattilio like others, distributed pornography in order to receive pornography in return thus the [five-point "thing of value"] enhancement applies."

Assuming for the sake of argument that counsel could be considered ineffective for conceding to the enhancement,[2] petitioner has failed to demonstrate that he was

---

[2] It appears that, at the time of sentencing, the Sixth Circuit had yet to decide that use of peer-to-peer software, by itself, does not necessarily subject a defendant to a five-point "thing of value" enhancement. This may offer some explanation as to why counsel failed to object. However, at least one other Circuit had considered the issue by that time. In Geiner, a Tenth Circuit panel rejected the idea "that the enhancement automatically

14

prejudiced as a result. The petitioner is correct in observing that use of a file-sharing program, by itself, is not enough to support a five-point "thing of value" enhancement. However, such use in conjunction with other evidence is sufficient, as long as it can be reasonably inferred that a defendant expected to receive pornography by making his files available to others. For example, such an expectation may reasonably be inferred where the defendant's use of file-sharing software is "sophisticated and extensive" and his computer contains several hundred images of minors engaged in sexual activity, United States v. Hardin, 437 F. App'x 469, 474 (6th Cir. 2011); or where chat logs between the defendant and an undercover agent demonstrate that the defendant "distributed pornography with the expectation that he would receive the same in return." United States v. Emmons, 524 F. App'x 995, 999 (6th Cir. 2013) cert. denied, 134 S. Ct. 297, 187 L. Ed. 2d 213 (2013); or where the defendant subscribes to a file sharing program, has a list of other file sharers who shared pornography with him, makes his own collection available to others, and posseses an "astounding number of images and videos found on his computer." United States v. Binney, 562 Fed.Appx. 376, 379 (6th Cir. 2014).

In light of this authority, it is not reasonably likely that the Court would have sustained an objection to the enhancement. Mr. Dattilio used file-sharing software, and he knowingly made his own collection of child pornography available to other users. He possessed are large volume of child pornographic images and videos (over 600) on 199

---

applies 'to a defendant who downloads and shares child pornography files via an internet peer-to-peer file-sharing network . . . .'" United States v. Geiner, 498 F.3d 1104, 1111 (10th Cir. 2007) (quoting United States v. Griffin, 482 F.3d 1008, 1013 (8th Cir. 2007)).

compact disks. His use of file-sharing software was sophisticated and extensive: over a period of about a year, he used a variety of file-sharing programs, including Kazaa, Bear Share Light, E-Mule, and Limewire. In addition, he downloaded child pornography both at home and at work, and the petitioner admitted he was a "collector" and viewed child pornography for two to three hours a day. Based on these undisputed facts, it is reasonable to infer that the petitioner expected to receive child pornography files by making his own files available to others. Therefore, the petitioner was not prejudiced by counsel's failure to object to the enhancement.

*Double Jeopardy*

Finally, the petitioner argues that his multiple convictions violated double jeopardy, and that his lawyer was ineffective for failing to make this argument. "The Double Jeopardy Clause 'protects against multiple punishments for the same offense.'" United States v. Ehle, 640 F.3d 689, 694 (6th Cir. 2011) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969).

In the present case, Count I charged receipt and distribution of image and video files showing actual minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2). Count II charged receipt and distribution of image and video files showing child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A). As the government acknowledges, there is a potential double jeopardy issue with respect to these two statutes, *provided* the two convictions were obtained based on the same conduct. But, this is not the case here since the petitioner admitted in the plea agreement to downloading and distributing two distinct categories of materials depicting the sexual

exploitation of minors. The petitioner alleges no facts to show that these convictions punished him for engaging the same conduct.

Count III charged the petitioner with knowingly possessing a computer and compact disks containing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Count three proscribes conduct that is plainly different from that of Counts I and II, as it involves possession of compact disks containing child pornography, whereas Counts I and II relate to receipt and distribution. In sum, the petitioner fails to describe a double jeopardy violation. Therefore, his lawyer was not ineffective for failing to raise the argument.

### V.

For the reasons stated above, the petitioner's motion is denied.

IT IS SO ORDERED.

                                                  /s/Lesley Wells
                                    UNITED STATES DISTRICT JUDGE

Date: 10 November 2014